**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

NIAMBI WILLIAMS,

                Plaintiff,

     vs.

EXPERIAN INFORMATION SOLUTIONS,
INC.; TRANS UNION, LLC; and HIGHER
EDUCATION LOAN AUTHORITY OF
THE STATE OF MISSOURI,

                Defendants.

Civil Case No.: 2:24-cv-06085

**COMPLAINT AND DEMAND**
**FOR JURY TRIAL**

Niambi Williams (nee Daniels) ("Plaintiff" or "Ms. Williams"), by and through the undersigned counsel, brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian"); Trans Union, LLC ("Trans Union") (collectively, the "Credit Bureau Defendants"); and Higher Education Loan Authority of the State of Missouri ("MOHELA"); (all defendants collectively, "Defendants"), and states as follows:

**<u>INTRODUCTION</u>**

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

2

7.      The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all
> sorts of computerized data banks, the individual is in great danger of having his life
> and character reduced to impersonal "blips" and key-punch holes in a stolid and
> unthinking machine which can literally ruin his reputation without cause, and make
> him unemployable or uninsurable, as well as deny him the opportunity to obtain a
> mortgage or buy a home. We are not nearly as much concerned over the possible
> mistaken turn-down of a consumer for a luxury item as we are over the possible
> destruction of his good name without his knowledge and without reason.
> Shakespeare said, the loss of one's good name is beyond price and makes one poor
> indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec.

36570 (1970)] (emphasis added).

8.      The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine

whether information disputed by consumers is inaccurate and record the current status of the

disputed information, or delete the disputed information, before the end of the 30-day period

beginning on the date on which the CRA receives the notice of dispute from the consumer. This

mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate

information contained within a consumer's credit report is corrected and/or deleted so as to not

prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.      In light of these important findings and purposes, Congress specifically noted "a

need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and

respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other third party

that provides information about consumer to a CRA, upon notice, to conduct a reasonable

reinvestigation of all disputes with regard to the completeness or accuracy of any information it

provides to the CRAs regarding a consumer and modify, delete, or permanently block any items

3

of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.     Plaintiff's claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiff's potential creditors that Plaintiff has two student loan accounts with Defendant MOHELA.

12.     Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.     Plaintiff also brings a claim against Defendant MOHELA for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

15.     Niambi Williams ("Plaintiff" or "Ms. Williams") is a natural person residing in Suffolk, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c). Her surname Williams is the result of her recent marriage; her prior surname was Daniels.

16.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 701 Experian Pkwy,

Allen, Texas 75013, and is authorized to do business in the State of New York, including within this District.

17.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

18.     Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 2 Baldwin Place, Chester, PA 19022, and is authorized to do business in the State of New York, including within this District.

19.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

20.     Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA") is a company that services federal student loans with its headquarters in Missouri and is authorized to do business in the State of New York, including within this District.

21.     MOHELA is a loan servicer and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

**A.     Summary of the Fair Credit Reporting Act**

24.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

25.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

26.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

27.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

6

28.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**B.     Factual Background**

29.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

30.     The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

31.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

32.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

33.     The Credit Bureau Defendants' consumer reports generally contain the following information:

(a)     Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

      (b)    Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

      (c)    Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

      (d)    Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

34.　The Credit Bureau Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA by furnishers.

35.　The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like the Credit Bureau Defendants) to make lending decisions.

36.　Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the Credit Bureau Defendants' consumer reports.

37.　The information the Credit Bureau Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

38.　FICO Scores are calculated using information contained in the Credit Bureau Defendants' consumer reports.

39.     The Credit Bureau Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by the Credit Bureau Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

40.     The Credit Bureau Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

41.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

42.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

43.     The Credit Bureau Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

44.     The Credit Bureau Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

45.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against the Credit Bureau Defendants for their inaccurate credit reporting.

46.     Thus, the Credit Bureau Defendants are on continued notice of their respective inadequate reporting procedures.  Specifically, the Credit Bureau Defendants are on notice that

9

their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

47.     The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants reported inaccurate information about them.

**C.     Plaintiff Consolidates Her Student Loans**

48.     In or around October 2022, Plaintiff went through the process of consolidating her student loans, resulting in MOHELA becoming the servicer of her student loans.

49.     Plaintiff has one single student loan account with Defendant MOHELA with Account Number 18-****-*837.

50.     After successfully consolidating her student loans, Defendant MOHELA assigned Plaintiff's single account with two (2) loan sequences: one associated with a $32,616.74, and the other associated with a balance of $162,958.06.

**D.     Defendants' Inaccurate Reporting of Plaintiff Student Loan Obligations**

51.     Approximately a year after consolidating her loans through Defendant MOHELA, Plaintiff's home was severely damaged by a storm.

52.     In order to make the necessary repairs to her home, Plaintiff decided to explore either refinancing her mortgage or obtaining a home equity line of credit ("HELOC").

53.     Accordingly, in or around October 2023, Plaintiff decided to review her credit reports from the Credit Bureau Defendants to help her decide on which course of action would be most beneficial.

54.     Upon review of her credit report, Plaintiff was shocked and confused to learn that Defendants Experian and Trans Union were inaccurately reporting her student loan debt from Defendant MOHELA ("Student Loan Account".)

55.     Plaintiff was confused and distressed by the Credit Bureau Defendants' inaccurate reporting, which portrayed Plaintiff as owing over $340,000.00 in student loans.

56.     Specifically, Experian was reporting her MOHELA student loan as follows:

>       Account name: MOHELA/DEPT OF ED;
>       Account number: 184570XXXXXXXX;
>       Balance: $197,637;
>       Date Opened: 11/18/2022.
>
>       Account name: MOHELA/DEPT OF ED;
>       Account number: 184570XXXXXXXX;
>       Balance: $146,510;
>       Date Opened: 11/18/2022.

57.     Trans Union was, similarly, reporting her MOHELA student loan as follows:

>       Account name: MOHELA/DEPT OF ED;
>       Account number: 184570XXXXXXXX;
>       Balance: $197,637;
>       Date Opened: 11/18/2022.
>
>       Account name: MOHELA/DEPT OF ED;
>       Account number: 184570XXXXXXXX;
>       Balance: $146,510;
>       Date Opened: 11/18/2022.

58.     Therefore, Experian and Trans Union were reporting a MOHELA debt in the total amount of $344,147.

59.     However, contrary to Experian and Trans Union's reporting, at this time, Plaintiff owed on her MOHELA account a total combined balance of $195,574.80.

60.     Put simply, Experian and Trans Union reported an additional $148,572.2 of debt that Plaintiff did not owe.

11

61.     Accordingly, between October and December 2023, Plaintiff contacted Defendant MOHELA multiple times via MOHELA's online portal but was unable to receive any assistance.

**E.     Plaintiff's January 2024 Disputes to the Credit Bureau Defendants Regarding the Inaccurate Credit Reporting**

62.     On or about January 19, 2024, extremely shocked, surprised, and embarrassed at the Credit Bureau Defendants' inaccurate reporting, Plaintiff disputed the inaccurate reporting of her MOHELA debt with each of the Credit Bureau Defendants.

63.     In her dispute to each of Trans Union and Experian, Plaintiff identified both MOHELA tradelines being reported, and explained the current standing of the tradelines and how much debt she owed to MOHELA.

64.     In her dispute to each of Trans Union and Experian, Plaintiff further identified how the MOHELA debt was being reported, and why that reporting was inaccurate.

65.     Enclosed with each of her disputes to Trans Union and Experian was a recent MOHELA statement, along with proof of identification and address.

66.     Finally, in her dispute to each of Trans Union and Experian, Plaintiff requested that Experian and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

**F.     Defendant Experian's Unreasonable Dispute Reinvestigation**

67.     Upon information and belief, Experian sent Defendant MOHELA an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 2024 dispute to Experian.

68.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

69.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 dispute.

70.     Thereafter, Defendant Experian failed to correct or delete its double reporting of Plaintiff's Student Loan Account appearing in Plaintiff's credit file.

71.     Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered January 2024, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**G.     Defendant Trans Union's Unreasonable Dispute Reinvestigation**

72.     Upon information and belief, Trans Union sent Defendant MOHELA an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 2024 dispute to Trans Union.

73.     Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

74.     Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 dispute.

75.     Thereafter, Defendant Trans Union failed to correct or delete the double reporting of Plaintiff's Student Loan Account appearing in Plaintiff's credit file.

76.     Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered January 2024 to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**H.     The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes**

77.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

78.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to

respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

79.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

80.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

81.    Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

82.    Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

83.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

84.    These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

85.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

86.    The data furnishers, like Defendant MOHELA, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether

the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

87.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**I.     Defendant MOHELA's Unreasonable Dispute Reinvestigation**

88.     Upon information and belief, in or around January 2024, Defendant MOHELA received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

89.     Upon information and belief, Defendant MOHELA failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or around January 2024.

90.     Upon information and belief, in or around January 2024, Defendant MOHELA either verified the disputed information as accurate to Defendant Experian or failed to respond to Experian at all.

91.     Upon information and belief, in or around January 2024, Defendant MOHELA received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

92.     Upon information and belief, Defendant MOHELA failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or around January 2024.

93.     Upon information and belief, in or around January 2024, Defendant MOHELA either verified the disputed information as accurate to Defendant Trans Union or failed to respond to Trans Union at all.

94.     Defendant MOHELA violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**J.     Plaintiff's April 2024 Dispute to the Credit Bureau Defendants Regarding the Inaccurate Credit Reporting**

95.     As of March 24, 2024, Defendant Experian was still inaccurately reporting Plaintiff's Student Loan Account with Defendant MOHELA.

96.     As of March 24, 2024, Defendant Trans Union was still inaccurately reporting Plaintiff's Student Loan Account with Defendant MOHELA.

97.     Plaintiff disputed the inaccurate reporting of her MOHELA debt with each of the Credit Bureau Defendants.

98.     In her dispute to each of Trans Union and Experian, Plaintiff identified both MOHELA tradelines being reported, and explained the current standing of the tradelines and how much debt she owed to MOHELA.

99.     In her dispute to each of Trans Union and Experian, Plaintiff further identified how the MOHELA debt was being reported, and why that reporting was inaccurate.

100.    Enclosed with each of her disputes to Trans Union and Experian was a recent MOHELA statement, along with proof of identification and address.

101.    Finally, in her dispute to each of Trans Union and Experian, Plaintiff requested that Experian and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

**K.    Defendant Experian's Unreasonable Reinvestigation**

102.    Upon information and belief, Defendant Experian sent Defendant MOHELA an automated credit dispute verification ("ACDV") pursuant to Plaintiff's April 2024 dispute to Defendant Experian.

103.    Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

104.    Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's April 2024 dispute.

105.    Thereafter, Defendant Experian failed to correct or delete double reporting of Plaintiff Student Loan Account appearing in Plaintiff's credit file.

106.    Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered April 2024 to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**L.    Defendant Trans Union's Unreasonable Reinvestigation**

107.    Upon information and belief, Defendant Trans Union sent Defendant MOHELA an automated credit dispute verification ("ACDV") pursuant to Plaintiff's April 2024 dispute to Defendant Trans Union.

108.    Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

109. Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's April 2024 dispute.

110. Thereafter, Defendant Trans Union failed to correct or delete the double reporting of Plaintiff's Student Loan Account appearing in Plaintiff's credit file.

111. Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered April 2024 to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**M.     Defendant MOHELA's Unreasonable Dispute Reinvestigation**

112. Upon information and belief, in or around April 2024, Defendant MOHELA received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

113. Upon information and belief, Defendant MOHELA failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or around April 2024.

114. Upon information and belief, in or around April 2024, Defendant MOHELA either verified the disputed information as accurate to Defendant Experian or failed to respond to the dispute at all.

115. Upon information and belief, in or around April 2024, Defendant MOHELA received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

116. Upon information and belief, Defendant MOHELA failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's dispute tendered in or around April 2024.

117.    Upon information and belief, in or around April 2024, Defendant MOHELA either verified the disputed information as accurate to Defendant Trans Union or failed to respond to the dispute at all.

118.    Defendant MOHELA violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

119.    As of early June 2024, each of the Credit Bureau Defendants did not modify their reporting in response to Plaintiff's dispute and instead continued to publish that Plaintiff owed over $340,000.00 in student loans with regard to Plaintiff's account with Defendant MOHELA.

120.    Plaintiff reasonably believes that Defendant MOHELA continued to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff owed over $340,000.00 in student loans.

121.    MOHELA's reporting to the Credit Bureau Defendants and failures to reinvestigate and update the MOHELA debt information was inaccurate for another reason: in or around April 2024, Plaintiff received notice from MOHELA that the MOHELA debt – the same debt about which she submitted disputes to the Credit Bureau Defendants – had been forgiven pursuant to an income-based program.

122.    Indeed, Plaintiff's account on MOHELA's online portal currently reflects that Plaintiff owes zero dollars in student loan debt with MOHELA.

123.    As a result of the inaccurate reporting of the Student Loan Account, the Defendants made it practically impossible for Plaintiff to continue to obtain credit.

124.    Upon information and belief, Defendants' inaccurate reporting caused Plaintiff's credit score and credit standing to be significantly reduced.

125.    Plaintiff knows that the amount of debt that she is being inaccurately and egregiously saddled with by Defendants will hinder her ability to obtain a loan to secure the much-needed repairs for her home.

126.    Moreover, Plaintiff is aware that the inaccurate and inflated debt that Defendants continue to portray as being owed by Plaintiff will negatively impact any credit opportunities she may have.

127.    Indeed, Plaintiff did inquire with a representative from LendingTree regarding a home repair loan but was informed by the representative that her debt-to-income ratio was too high and that she would likely not qualify for a home repair loan with an interest rate that is at-all reasonable.

128.    Moreover, and due to the inaccurate reporting of the MOHELA debt and Defendants' violations in failing to correct their reporting, Plaintiff was deterred and refrained from applying for an auto loan that she desperately needed.

129.    In particular, Plaintiff often needs to commute between New York and Maryland, and other venues, due to her work. Although Plaintiff wanted to finance the purchase of a vehicle, she was deterred by the inaccurate credit reporting and refrained from doing so.

130.    As a result, Plaintiff was often forced to borrow her husband's vehicle to commute for work, which was practically, logistically, psychologically, and emotionally challenging and difficult.

131.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

132.    At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

133.    As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

134.    The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

135.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate

credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Experian and Trans Union)**

136.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

137.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

138.    Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

139.    Defendants Experian and Trans Union prepared patently false consumer reports concerning Plaintiff.

140.    Defendants Experian and Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

141.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

142.    Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

143.    As a result of Defendants' Experian and Trans Union conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

144.    Defendants Experian and Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

145.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Experian and Trans Union)**

146.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

147.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a

consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

148.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

149.    On at least one occasion, Plaintiff disputed the inaccurate information with Experian and Trans Union and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the double reporting of her Student Loan Account with Defendant MOHELA.

150.    In response to Plaintiff's dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

151.    In response to Plaintiff's dispute, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

152.    The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

153.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

154.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

155.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(Only Claim for Relief Against Defendant MOHELA)**

156.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

157.    Defendant MOHELA furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian and Trans Union.

158.    Defendant MOHELA violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing

to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian and Trans Union.

159.    As a result of Defendant MOHELA's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

160.    Defendant MOHELA's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

161.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant MOHELA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a)      Determining that Defendants negligently and/or willfully violated the FCRA;

b)      Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)      Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and

d)      Granting further relief, in law or equity, as this Court may deem appropriate and

just.

### DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: August 29, 2024               */s/ Levi Y. Eidelman*
                                     Levi Y. Eidelman, Bar No. 5742499
                                     **CONSUMER ATTORNEYS**
                                     300 Cadman Plaza West, 12th Floor, Suite 12049
                                     Brooklyn, NY 11201
                                     T: (718) 360-0763
                                     F: (718) 715-1750
                                     E: leidelman@consumerattorneys.com

                                     *Attorneys for Plaintiff Niambi Williams*